**In re Anonymous No. 6 D.B. 86**

Disciplinary Board Docket no. 6 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

HEH, *Member,* August 21, 1987 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the disciplinary board of the Supreme Court of Pennsylvania submits its findings and recommendations regarding the · above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on May 25, 1965. At the time the alleged misconduct occurred respondent was associated with a partnership in [    ], Pa.

Petitioner filed a petition for discipline on February 19, 1986, which was served on respondent on February 25, 1986. The petition for discipline charged respondent with violating the following disciplinary rules of the Code of Professional Conduct:

(A) D.R. 102(A)(3), prohibiting illegal conduct involving moral turpitude;

(B) D.R. 1-102(A)(4), prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation;

(C) D.R. 1-102(A)(5), prohibiting conduct prejudicial to the administration of justice;

(D) D.R. 1-102(A)(6), prohibiting conduct which adversely reflects on an attorney's fitness to practice law; and,

(E) D.R. 9-102(A), prohibiting the commingling of client funds with funds of an attorney.

Respondent filed an answer to the petition which admitted the allegations stated in the petition (this answer was not filed within 20 days). The matter was referred to Hearing Committee [   ], consisting of [   ].

A hearing was convened on April 23, 1986. Both petitioner and respondent filed briefs with the committee.

The committee filed its report on December 1, 1986, recommending that respondent be suspended from the practice of law for a period of one year. Neither party filed a brief on exceptions. The matter was referred to the board on January 12, 1987, and was adjudicated at the meeting of the board held on January 29, 1987.

Respondent is charged with the above violations of the disciplinary rules arising form the alleged misappropriation of funds from the firm's escrow account to make a mortgage payment on his personal residence which was the subject of foreclosure proceedings. Respondent admits that he temporarily utilized funds from the escrow account for his own personal use. Therefore, there is no dispute regarding the facts of the case.

The hearing committee found that respondent violated D.R. 1-102(A)(4) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. This conclusion was based on respondent's "recklessness" rather than intent on his part to defraud, deceive, or misrepresent. The committee considered several mitigating factors, which are as follows:

(a) Respondent did not intend to permanently deprive the owner of his funds,

(b) Respondent was influenced by a serious personal financial crisis, and

(c) Respondent did not have an adequate understanding of fundamental principles of law.

The committee found that respondent violated D.R. 1-102(A)(6) which prohibits an attorney from engaging in conduct which adversely reflects on an attorney's fitness to practice law. The committee reached this conclusion based on the nature of the act of personal use of escrow funds and respondent's lack of knowledge of the law regarding mortgage foreclosure and personal use of client's funds. The committee considered that respondent's conduct in this case was not heinous and that respondent admitted his acts. The committee, relying on *Office of Disciplinary Counsel v. Keller*, 509 Pa. 753, 506 A.2d 872 (1986), did not take into consideration the defense asserted by respondent that he was suffering from severe emotional distress.

The committee also found that respondent violated D.R. 9-102(A) regarding the maintenance of a client account. The committee, however, did not reach a conclusion on the alleged violation of D.R. 1-102(A)(3) or D.R. 1-102(A)(5), stating that a conclusion regarding those charges was not necessary in deciding the recommended discipline of one-year suspension.

## FINDINGS OF FACT

(1) Respondent is 47 years old, is married and lives at [    ]. He has two daughters, ages 21 and 18, in college. Respondent graduated from [    ] College in 1960 and from the [    ] School of Law in 1964. He was admitted to practice law in the Commonwealth of Pennsylvania, on or about May 25, 1965. He served two terms in the legislature of the commonwealth, from approximately 1971 to 1975.

(2) On January 1, 1982, respondent formed a partnership for the general practice of law with attorneys [A] (who had been an associate of respondent since approximately September 1981) and [B]. The law firm was known as [C], with an office address of [    ].

(3) The law firm maintained an escrow account at the [D] company, wherein, they appropriately maintained the funds of the law firm's clients in conformity with the requirements of Disciplinary Rule 9-102(A).

(4) As of October 30, 1985, the escrow account contained a balance of approximately $14,636.

(5) On Thursday, October 31, 1985, respondent drafted check number 5016 in the amount of $14,000 drawn on the law firm's escrow account and made payable to himself.

(6) On October 31, 1985, respondent deposited the $14,000 into his own personal checking account, jointly titled with his wife, at the [D] Company.

On or about October 31, 1985, respondent issued a check from his personal bank account payable to the [E] Bank of [    ], Pa., for an amount in excess of $13,000 to forestall service upon him of a complaint in mortgage foreclosure, relative to respondent's personal residence.

(8) Respondent wished to avoid publicity which he thought would accompany further proceedings on the foreclosure action and used client funds to accomplish that goal.

(9) On Monday, November 4, 1985, respondent's partners discovered that check number 5016 was missing from the law firm's checkbook and obtained the cancelled check from the bank (which is located in the same building as their office) and learned that the check had been prepared by and made payable to respondent.

(10) Later in the afternoon of November 4, 1985, respondent's partners confronted respondent with the cancelled check and respondent admitted that he had used the funds to make a payment to the mortgagee on his personal residence, so that the mortgagee would not publicize the foreclosure action or a possible sheriff's sale.

(11) Respondent's partner, [A], demanded that respondent make restitution to the escrow account by the end of the following day, Tuesday, November 5, 1985.

(12) Respondent did not make restitution to the escrow account until Thursday, November 7, 1985, when he issued a check drawn on his bank account in the amount of $14,000 made payable to the law firm.

(13) The decision to dissolve the law partnership was made on Tuesday, November 5, 1985, and effectuated on Wednesday, November 6, 1985.

(14) No client of the law firm knew about or suffered any harm or prejudice as a result of respondent's use of the escrow account to satisfy his personal financial obligation.

(15) It was respondent's best judgment that the mortgage on his home had been in arrears for approximately five or six months, and that the bank had initiated a mortgage foreclosure action and given him a deadline of November 1, 1985, to bring his mortgage up-to-date.

(16) Respondent planned on obtaining the needed money from his mother.

(17) On or about Monday or Tuesday, October 28 or 29, 1985, respondent called his sister to contact his mother to instruct his brother to write a check on his mother's account. His brother was the attorney-in-fact for his mother.

(18) By October 31, 1985, respondent had not heard from his sister, nor had he heard from either his mother or brother, as to whether his mother would loan him the necessary funds.

(19) Respondent had no doubt in his mind at the time he wrote the check on the law firm's escrow account, that his mother would, in fact, lend him the necessary money.

(20) On November 5, 1985, respondent called his brother and learned that his mother had not contacted him. Respondent then called his mother and discovered that his mother could not remember whether respondent's sister had previously asked her for the money on respondent's behalf. Respondent's mother agreed to give respondent the needed money and on Wednesday, November 6, 1985, the respondent went to [    ] and received a check from his brother drawn on his mother's account.

(21) During the period that the mortgage was in default, respondent never sought help from his family, nor did he travel a relatively short distance to visit either his brother or his mother in order to seek funds, nor did he take any other steps in the nature of self-help, other than writing a check from his escrow account.

(22) On July 13, 1984, a complaint was received against respondent for violating D.R. 6-101(A)(3) which resulted in an informal admonition being rendered to respondent on October 26, 1984.

(23) Respondent had demonstrated a lack of knowledge regarding the mechanics of mortgage foreclosure and the legal steps and implications that result from an action in mortgage foreclosure being instituted.

(24) There is no evidence in this case that respondent presently retains funds which should have been disbursed to clients or others.

## CONCLUSIONS OF LAW

The disciplinary board concludes that, because of his conduct, respondent has violated the following disciplinary rules:

(A) D.R. 1-102(A)(4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(B) D.R. 1-102(A)(6), prohibiting conduct which adversely reflects on an attorney's fitness to practice law; and

(C) D.R. 9-102(A), mandating the creation of a separate client account for client funds.

## DISCUSSION

It is obvious that respondent has violated the trust and confidence of his clients and partners by using the escrow funds for personal purposes even though no harm resulted to the clients and even though the personal use was very brief in duration. Respondent's acts, despite the lack of harm and the short duration, are so repulsive to the standards of professional ethics as to warrant the imposition of discipline in the form of suspension.

The decision of the Supreme Court in *Office of Disciplinary Counsel v. Kochel,* 556 Disciplinary Docket no. 2, is instructive regarding the appropriate discipline in the case at hand. In *Kochel,* respondent misappropriated $11,095 from the client escrow account on 23 separate occasions over a 16-month period, making regular reimbursements to the account over that period. The discipline in that case was a three-month suspension. Because the case at hand involved only one instance of conversion and restitution was made within several days, we feel compelled to recommend discipline no more severe than that imposed in *Kochel.*

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board recommends that respondent be suspended from the practice of law for a period of three months. The board recommends further that respondent be ordered to pay the costs of investigating and prosecuting this matter.

Messrs. Schwartzman, McGinley and Padova dissent and would recommend a one-year suspension.

Mr. McDonald did not participate in the adjudication.

## ORDER

And now, July 28, 1988, upon consideration of the report and recommendations of the disciplinary board dated August 21, 1987, and the petition for review, it is hereby ordered that respondent be and he is suspended from the bar of this commonwealth for a period of three months, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.

Mr. Justice Larsen files a dissenting opinion.

## DISSENTING OPINION

LARSEN, *J.* — Once again, the court has before it a case involving the theft of client funds by an attorney. Once again, my colleagues have failed to appreciate the significance of the conduct in question and have imposed a sanction which is inappropriate in view of the offense involved.

On October 31, 1985, respondent, [    ], stole $14,000 from his law firm's client escrow account and used those funds to forestall the initiation of a

mortgage foreclosure proceeding on his residence. On November 4, 1985, his partners discovered what had occurred and demanded that respondent make full restitution by the end of the following day. On November 7, 1985, respondent made restitution in full with funds borrowed from his aging mother.

A petition for discipline was filed against respondent, and the hearing committee found that respondent had violated the following disciplinary rules: (1) D.R. 1-102(a)(4), prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation; (2) D.R. 1-102(A)(6), prohibiting conduct which adversely reflects upon fitness to practice law; and (3) D.R. 9-102(A), prohibiting the commingling of client funds with funds of an attorney. The hearing committee recommends that a one-year suspension be imposed, but a majority of the disciplinary board, citing *Office of Disciplinary Counsel v. Kochel,* 515 Pa. 449, 529 A.2d 1075 (1987), recommended the imposition of a three-month suspension. Disciplinary counsel filed a petition for review and urged this court to suspend respondent for one year. Noting that respondent has previously been subject to an informal admonition for another violation of the rules, disciplinary counsel questions respondent's knowledge in the law, his appreciation of the significance of his acts and his judgment.

The majority of this court, in following the disciplinary board's recommendation, condones attorney theft of client funds (referred to by respondent as "borrowing" and a "technical wrongdoing") and "signals to the legal profession in this commonwealth that this court views the theft of clients' money as a minor infraction." *Kochel, supra* (Larsen, J., dissenting).

I shall continue to insist that we adopt a per se rule providing for disbarment when a lawyer steals

client funds. My paramount concern in these cases is to uphold the integrity of the profession, to engender public confidence in the disciplinary system, and to protect client monies which have been entrusted to the lawyer. Accordingly, I dissent and would recommend that respondent be disbarred.